Filed 1/5/24  In re B.D. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re B.D., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ADRIANA D. et al.,<br><br>Defendants and Appellants. | F086678<br><br>(Super. Ct. No. JVDP-22-000186)<br><br>**OPINION** |

## THE COURT\*

APPEAL from an order of the Superior Court of Stanislaus County.  Rubén A. Villalobos, Judge.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant Adriana D.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant Daniel D.

Thomas E. Boze, County Counsel, and Sophia Ahmad, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

**INTRODUCTION**

Adriana D. (Mother) and Daniel D. (Father) appeal from the order terminating their parental rights as to their second biological son, B.D., pursuant to section 366.26 of the Welfare and Institutions Code. (Undesignated statutory references are to the Welfare and Institutions Code.) On appeal, Mother and Father both argue, if we reversed the termination of parental rights as to B.D.'s biological brother, M.D., we should also reverse the termination of parental rights as to B.D. because the beneficial sibling relationship exception to termination applies. We recently affirmed the termination of Mother and Father's parental rights to M.D. in an unpublished decision, *In re M.D.* (Dec. 12, 2023, F086442).

We now affirm the court's order with regard to B.D.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother and Father's second biological son is the subject of this appeal. However, because of its relevance to the instant case, we also detail facts related to their prior dependency matters.

*March 2018 Death of Foster Child and Subsequent Termination of Parental Rights as to Adopted Children*

Mother and Father previously cared for foster child J.C., who was found unresponsive by Mother on March 17, 2018; J.C. was two years old at the time. J.C. died as a result of his injuries. The autopsy report indicated J.C.'s cause of death was blunt force trauma, and his injuries were nonaccidental and caused by an adult. Mother and Father reported J.C. had fallen at the playground and in the bathtub, but their version was determined to be inconsistent with J.C.'s injuries.

As a result of J.C.'s death, Mother and Father's adopted daughter and son (the adopted children) were removed from Mother and Father's custody in March 2018. Thereafter, the adopted daughter reported Mother "pow pows" the adopted son. The adopted children were diagnosed with posttraumatic stress disorder. Mother and Father

2.

were subsequently denied reunification services as to the adopted children, and their parental rights were terminated.

***Subsequent Termination of Parental Rights as to M.D.***

In 2021, the Stanislaus County Community Services Agency (Agency) received a report from a mandated reporter that Mother had recently given birth to a baby boy, M.D. On November 16, 2021, social workers contacted Mother and Father during an unannounced visit to their residence. M.D. was removed from their home. Two days later, the Agency filed a juvenile dependency petition on behalf of M.D. and a detention report in the Stanislaus Superior Court recommending that less than two-month-old M.D. be "detained in suitable placement pending further hearings." The court held an initial hearing on November 19, 2021, during which it made temporary detention findings. A contested detention hearing was held on December 1, 2021. The court found a prima facie showing had been made that M.D. was a person described by section 300. The grounds for detention were listed as: "[s]ubstantial danger to minor's physical or emotional health." The court held a jurisdiction/dispositional hearing beginning on May 4, 2022, and ending on September 22, 2022. After the conclusion of evidence and arguments, the court made jurisdictional findings and denied reunification services to both parents, because the court found "by clear and convincing evidence as to [section 300, subdivision] (b)(4), that the parents caused the death of another child through abuse or neglect. [¶] [Section 300, subdivision] (b)(6), that the child has been adjudicated dependent due to infliction of severe physical harm to the siblings by [Mother] and [Father], and that it would not benefit the child to pursue reunification with the parents." Additionally, "[a]s to [section 300, subdivision] (b)(11), the parental rights of the parents of the siblings have been permanently severed. That parental rights were terminated on August 14th, 2019. And subsequently, the parents have not made a reasonable effort to treat the problems that led to the removal of the siblings of the child, [M.D.]" The court later held a section 366.26 permanency hearing at which it terminated the parental rights

of Mother and Father as to M.D. and it held that M.D. "continues as a dependent child of the court and remains in suitable placement under the supervision of" the Agency.

Mother and Father appealed from the order terminating their parental rights as to M.D., asserting the court erred in failing to conclude the beneficial parental relationship exception applied. We recently affirmed the termination of Mother and Father's parental rights to M.D. in an unpublished decision, *In re M.D.*, *supra*, F086442.

***August 2022 Juvenile Dependency Petition Regarding B.D.***

On August 18, 2022, the Agency filed a juvenile dependency petition in the juvenile court related to Mother and Father's newborn biological son, B.D. The petition indicated B.D. had been with a family friend who was filing for guardianship when B.D. was referred to the Agency and detained on August 16, 2022. The Agency placed B.D. with a foster family with his sibling M.D.

The petition included jurisdictional allegations under section 300, subdivision (a) (serious physical harm), (b)(1) (failure to protect), (f) (caused another child's death through abuse or neglect), and (j) (abuse of a sibling), that detailed the circumstances leading to J.C.'s death and the removal and termination of parental rights as to Mother and Father's adopted children. Specifically, it stated on March 17, 2018, J.C., a two-year-old foster child in Mother and Father's custody at the time, was found unresponsive by Mother and taken to the emergency room. The detention report indicated J.C. died as a result of his injuries and the autopsy report indicated his death was caused by "blunt head injuries that were non-accidental and adult inflicted. It was also noted that violent shaking may very well have been part of the mechanism of death." Mother stated J.C. had fallen at the park on March 6th; there was noticeable bruising on his ear after the incident, but Mother did not take him to the doctor. A couple of days prior to being found unresponsive, Mother reported J.C. fell in the bathtub. There were numerous bruises on J.C.'s forehead and both ears, a laceration to the liver, two hematomas on the pancreas, and retinal hemorrhages in both eyes. "The inner ear bruises [were] consistent

4.

with someone smacking the ears with an open palm on both sides. There is a direct blow to the ear and forehead." The two adopted children were removed from Mother and Father's care. They reported Mother "hit the baby and the baby doesn't move." One of them also reported Mother hit the other adopted child, who suffered from extreme posttraumatic stress disorder and sometimes said "'no spank … no pow pows … no whopping, no hit me.'" The dependency petition alleged reunification services were denied to Mother and Father pursuant to section 361.5, subdivision (b)(4) as to their other children and their parental rights were terminated as to their adopted children. It further asserted Mother and Father "used inappropriate physical discipline" on one of their adopted children, resulting in bruising to his body and severe emotional trauma. It also stated the Agency's inquiry gave it no reason to believe B.D. is or may be an Indian child within the meaning of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.). The Agency recommended B.D. be detained in suitable placement pending future hearings.

The court held an initial hearing on August 19, 2022, during which it made temporary detention findings. It found by clear and convincing proof: reasonable efforts had been made to prevent or eliminate the need for removal; continuance in the home of a parent would be contrary to the child's welfare; temporary placement and care is vested with the Agency pending disposition or further order of the court; and the child was ordered detained in suitable placement pending future hearings. On August 22, 2022, the court issued an order of detention and also ordered that Mother and Father were to be permitted two supervised visits per week for one hour; both parents could visit together.

***Jurisdiction/Disposition Proceedings and Bypass of Services***

The Agency submitted a jurisdiction report dated September 1, 2022, in which it recommended the August 18, 2022, petition be found true, the matter be set for a disposition hearing, and all prior orders made on August 22, 2022, remain in full force and effect. It noted B.D. was currently placed with his sibling M.D. in a licensed foster

family home in Stanislaus County. It detailed that Mother and Father had a current child welfare case pending in Stanislaus County related to M.D. that was set for a contested jurisdiction/disposition hearing with a recommendation to deny reunification services to both Mother and Father pursuant to section 361.5, subdivision (b)(4), (6), and (11). Additionally, Mother and Father's parental rights were terminated as to their former adopted children who were subsequently adopted. The report detailed the jurisdictional allegations from the petition and attached supporting documentation, including medical documentation related to J.C.'s injuries, hospitalization, and ultimate death and the dependency proceedings related to Mother and Father's former adopted children.

An amended dependency petition was filed on September 22, 2022, adding an allegation that, pursuant to section 355.1, subdivision (a), the sibling's injuries "would not ordinarily be sustained except as a result of the unreasonable or neglectful acts or omissions of either parent who had care or custody of the minors." The petition also reported, upon inquiry, neither Mother nor Father had reason to believe the child is or may be an Indian child. The Agency also filed a disposition report that day recommending B.D. be adjudged a dependent of the Stanislaus County Juvenile Court and removed from parental custody, and that reunification services be denied to Mother and Father pursuant to section 361.5, subdivision (b)(4), (6), and (11). It noted B.D. was placed with his brother, M.D., in a licensed foster family agency home in Stanislaus County. The disposition report further stated B.D. was "doing well in placement and has adjusted appropriately." It reflected that Mother and Father had supervised visitation twice a week for one hour. "The parents interact appropriately with the minor and visits are going well, no concerns have been noted."

A second amended dependency petition was filed on October 20, 2022, that included a notation that, on September 22, 2022, Mother and Father were denied reunification services as to their other biological son, M.D., who was also the subject of a pending child welfare case. An addendum report was also filed that day, again

recommending B.D. be adjudged a dependent of the Stanislaus County Juvenile Dependency Court, reunification services be denied to Mother and Father pursuant to sections 361.5, subdivisions (b)(4), (6), (7), and (11), and the matter set for a section 366.26 hearing. The report again indicated B.D. was placed with his brother M.D. in a licensed foster family agency home in Stanislaus County. The Agency filed another addendum report on December 19, 2022, stating in part the parents were engaging in services and counseling and had requested additional services. Father's clinician reported, "'[a]fter many hours of discussion and introspection, [Father] found that he was able to understand and believe that it was possible that the [foster] child's death was not accidental. [Father] further clarified that although he has never seen any behaviors from [Mother] that indicate that she could ever be capable of injuring a child, he acknowledges that it is possible.'" Future sessions with Father would be focused on "safety planning to prevent future abuse" and some work had begun regarding "preparation for being a single parent, more discussion will take place in future sessions."

The Agency also filed a psychological evaluation related to B.D. on December 27, 2022, conducted by Anthony Urquiza, Ph.D. The report stated, "[i]t is highly unlikely that [Father] and [Mother] would be able to undertake a path toward reunification given their current failure to acknowledge the harm to other children in their care. Additionally, any effort toward reunification would require extensive services … not likely to be completed within the statutory limits of reunification. As a result, efforts toward reunification with [Father] and [Mother] are not in [B.D.'s] best interests." He noted Father and Mother had not acknowledged responsibility for past abusive incidents and have not made progress addressing the issues that led to the removal of B.D.'s siblings and the subsequent termination of parental rights. He also opined that placement of B.D. in Mother and Father's care would result in risk of serious harm, and it would be difficult to provide sufficient services to Father and Mother within the statutorily defined time period.

The court held a jurisdiction/dispositional hearing beginning on January 10, 2023. On March 8, 2023, the court found the first amended petition filed on October 20, 2022, to be true by clear and convincing evidence, that B.D. was a child as described by section 300, subdivisions (a), (b)(1), (f), and (j), and it denied Mother and Father reunification services pursuant to section 361.5, subdivision (b)(4), (6), (7), and (11), concluding the parents had "not fully addressed the underlying circumstances or accountability as to the causes that led to this current case." It found, pursuant to section 361, subdivision (c), "there is or would be a substantial danger to the physical health, safety, protection or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the parents' physical custody."

Father's attorney filed a motion to withdraw and was relieved by the court on March 17, 2023. The Office of Dependency Counsel was appointed as counsel for Father. On March 29, 2023, Father's attorney filed a petition to invalidate the proceedings pursuant to the ICWA on Father's behalf, asserting the paternal grandmother planned to file an application for citizenship in the Cherokee Nation of Oklahoma and would be requesting to enroll Father, B.D., and M.D. (the other biological son who is not the subject of this appeal). The petition further asserted the Agency failed in its duty to continue its inquiry under the ICWA and the court should invalidate the proceedings to date on that basis and return both M.D. and B.D.'s cases to conduct a dispositional hearing. The Agency filed an ICWA compliance report on April 3, 2023, recommending the court find there is a reason to believe the ICWA may apply as to B.D. It detailed the Agency's attempts to contact family members and indicated the Agency would continue to complete further inquiry.

On April 5, 2023, the paternal grandmother filed a JV-180 form request to change a court order, asking the court to establish separate visitation between the paternal grandmother and B.D. and an order for "specific placement of the Child with Paternal

Grandmother." The court set a hearing on the request for April 12, 2023, and then denied it.

### Section 366.26 Hearing and Termination of Mother and Father's Parental Rights

The Agency filed a section 366.26 report with the court on July 17, 2023, recommending B.D. "be continued as [a] dependent of the Stanislaus County Court" and the parental rights of Mother and Father be "permanently terminated." The report stated B.D. was placed with prospective adoptive parents on August 16, 2022, and "[t]he prospective adoptive parents are certain to adopt" B.D. "if given the opportunity to do so." B.D. appeared to be well-cared for and loved and accepted by extended family members. The report noted it was clear Mother and Father love B.D., but a minor dependent died in their care due to physical abuse, which puts B.D. at "great risk." The report stated, although Mother and Father "have regularly and consistently visited with [B.D.], they have not had [B.D.] in their care for the majority of his life." "Therefore, there is not a substantial, positive, emotional attachment" from B.D. to Mother and Father. "Thus, the termination of the relationship with the parents would not hard [*sic*] [B.D.] to an extent, outweighed on balance, by the security of a new, adoptive home." Accordingly, the Agency recommended Mother and Father's parental rights be terminated and that adoption be the permanent plan for B.D. with his current care providers. The report attached Agency logs, visit reports, B.D.'s birth certificate, and a "Child Crisis Center email" noting paternal grandmother never scheduled her own visits

The Agency filed an ICWA compliance report dated July 13, 2023, recommending the court find there is no reason to know B.D. is an Indian child and the ICWA does not apply to him. On July 26, 2023, B.D.'s foster parents filed a "De Facto Parent Statement" (JV-296), requesting they be granted de facto parent status as to B.D.

The court held a section 366.26 hearing on August 2, 2023. The Agency asked the court to adopt the findings and recommendations in its report, conclude B.D. is not an Indian child within the meaning of the ICWA, and to grant B.D.'s foster parents de facto

9.

parent status. At the hearing, Mother's attorney asserted "the Agency's report does not address the bond between [B.D.] and his mother, which is the only potential exception that would prevent termination of parental rights today." She also expressed Mother's support for Father's petition to invalidate the proceedings. Father's attorney echoed the comments of Mother's attorney, and asked the court to grant the petition to invalidate the proceedings, find the Agency had not met its burden by clear and convincing evidence to show B.D. was adoptable, or alternatively, to find by clear and convincing evidence that it was not in B.D.'s interest to terminate Father's parental rights "due to [the] official relationship exception." The Agency's attorney indicated the Agency had "attach[ed] all the visitation logs for the case. So the relationship has been evidenced through visits that have occurred since the child has been detained." The Agency believed, as its report indicated, "that the benefit of adoption through the evidence submitted for this report and in the entirety of this case shows that there is not that positive emotional and substantial relationship that would outweigh the benefits of adoption."

The court began by making a finding "[t]hat the child's placement is necessary and appropriate" and "the Agency ha[d] complied with the case plan by making reasonable efforts, including whatever steps are necessary to finalize a permanent placement of the child." The court also found: "the extent of progress towards alleviating or mitigating the causes necessitating placement by the mother and father have been none"; "it's likely that the child will be adopted"; "termination of parental rights would not be detrimental to [B.D.]"; and "the permanent plan of adoption is appropriate." The court further found there was "no reason to know that the child is an Indian child and that the [ICWA] does not apply." The court further found a final visit would not be detrimental to B.D. and should be scheduled within 45 days. The court noted B.D. has a sibling under court jurisdiction; the nature of the relationship between the siblings is good; it is appropriate to develop and maintain those relationships; the siblings are placed

10.

together; and "the sibling relationship does not impact on permanency planning, as they are placed together."

The court terminated the parental rights of Mother and Father and found B.D. "continue[s] as a dependent child of the court" and remains in suitable placement under the supervision of the Agency. The court also granted the foster parents' de facto parent request and denied Father's request to invalidate the proceedings.

## DISCUSSION

In this appeal, Father notes he and Mother challenged the termination of parental rights as to their other biological son, M.D., B.D.'s brother, in a recent appeal. In that case, Mother and Father argued the juvenile court erred in failing to conclude the beneficial parental relationship exception to termination applied. (See *In re M.D.*, *supra*, F086442.)[1] Father now asserts, if our court finds error in M.D.'s case and reverses the termination of parental rights as to M.D., we "must also reverse the termination of parental rights as to [B.D.]" because M.D. and B.D.'s "sibling relationship would be interfered with should the court uphold the termination of parental rights to [B.D.] yet reverse the order of the court as to [M.D.]" Mother asserts she has standing to join Father's brief and she joins in and adopts by reference his arguments. She also argues, if we reverse the order terminating Father's parental rights, her rights are required to be reinstated too. The People respond that Father's argument regarding what would occur if the termination of parental rights was reversed as to M.D. is speculative and it was waived by Father's failure to raise it below. They further contend the record does not

---

[1]Father filed an unopposed request for us to take judicial notice of the proceedings from the appeal in *In re M.D.*, *supra*, F086442, an appeal from the termination of Mother and Father's parental rights as to their other biological son, M.D. Because there is no opposition to Father's request that we take judicial notice of the record from that appeal and we may do so under Evidence Code sections 452, subdivision (d), and 459, subdivision (a), we grant Father's request as it relates to this record.

11.

support application of the beneficial sibling relationship exception.  We reject Mother and Father's argument.

"[T]he goal at the section 366.26 hearing is 'specifically … to select and implement a permanent plan for the child.'"  (*In re Caden C*. (2021) 11 Cal.5th 614, 630.)  "Adoption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573; accord, *In re Valerie A*. (2007) 152 Cal.App.4th 987, 997.)  If the court finds a child is likely to be adopted if parental rights are terminated, it must select adoption as the permanent plan unless it finds termination of parental rights would be detrimental to the minor under one of the specified exceptions.  (§ 366.26, subd. (c)(1).)  The parent has the burden to show termination would be detrimental to the minor under one of those exceptions.  (*In re Andrea R.* (1999) 75 Cal.App.4th 1093, 1108; *In re Valerie A*., *supra*, at p. 997.)  "'[T]he statutory exceptions merely permit the court, in exceptional circumstances [citation], to choose an option other than the norm, which remains adoption.'"  (*In re Caden C.*, *supra*, at p. 631.)

One of these is the beneficial sibling relationship exception found in section 366.26, subdivision (c)(1)(B)(v).  It provides an exception to termination of parental rights when "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption."  (*Ibid*.)

This exception does not apply here.  The reports presented in the juvenile court reflect B.D. and M.D. were placed together in a licensed foster family; the plan for both of them was adoption; Mother and Father's parental rights were subsequently terminated as to both M.D. and B.D.; and the foster parents were granted de facto parent status as to

B.D.  Furthermore, relevant here, as discussed, in *In re M.D.*, *supra*, F086442, we affirmed the termination of Mother and Father's parental rights as to M.D.  Thus, Father's argument (which Mother joins)—which was contingent upon us reversing the termination of parental rights as to M.D.—does not apply.  Rather, neither Mother nor Father have established the termination of their parental rights as to B.D. is warranted based upon the application of the beneficial sibling relationship exception.  That is, neither has established adoption would interfere with a close and beneficial sibling relationship.

Thus, we reject their sole contention.

## DISPOSITION

The juvenile court's order is affirmed.